George Anna JOHNSON, now deceased, By and Through Kelley LACKEY, personal representative of the Estate of George Anna Johnson, deceased, Appellant,

v.

Bob R. SCHICK, Defendant,

and

Matt Dowling, Interpleaded Additional Party Claimant, Appellee.

No. 79914.

Supreme Court of Oklahoma.

Oct. 11, 1994.

Gerald E. Kelley, Kelley & Kelley, P.C., Oklahoma City, for appellant.

Matt Dowling, Elaine M. Dowling, Oklahoma City, for appellee.

ALMA WILSON, Justice:

The sole issue is which of two creditors, the appellant, Kelley Lackey, or the appellee, Matt Dowling, has priority over the funds inherited by the defendant, Bob R. Schick. The trial court ruled in favor of Dowling. The Court of Appeals reversed. This Court has previously granted certiorari.

In 1987, George Anna Johnson obtained three judgments against Bob R. Schick, attorney, in the amounts of $10,000, $24,000, and $25,000. George Anna Johnson died on August 7, 1989. Kelley Lackey, the daughter of George Anna Johnson, was appointed Personal Representative of Johnson's estate and therefore became the successor-in-interest to the judgments awarded to Johnson.

On December 12, 1990, Schick assigned all of his right, title, and interest in the estate of his mother, Retta Jean Schick, who was then living, to Matt Dowling.[1] This assignment was executed in order to satisfy a debt of approximately $18,000 owed by Schick to Dowling.[2] Two days after the assignment, Bob Schick's mother died.

On January 28, 1991, Lackey filed a garnishment summons with the personal representative of the estate of Schick's mother. The summons directed the personal representative to pay into court any funds held which were owing to Schick. The personal representative filed an answer stating that Dowling was also claiming an interest in the inheritance, and suggesting that Lackey move to interplead Dowling in the garnishee action.[3] Dowling's claim was based on a hand-written, notarized assignment made to him by Schick, that any monies owing to

Schick from his mother's estate should go to Dowling in satisfaction of Schick's debts to Dowling. On February 22, 1991, the trial court granted Lackey's motion to interplead Dowling as an additional party claimant.

On May 1, 1992, the trial court directed the garnishee, as personal representative of Retta Jean Schick's estate, to deposit into the trial court fund all monies owing to Bob R. Schick from the estate of his late mother, so that the trial court could determine whether Dowling or Lackey had priority to the funds. Pursuant to that order, the garnishee, on May 22, 1992, deposited $19,607.66, Schick's share of his mother's estate, into the court fund. The trial court found that Dowling's claim was valid, prior, and superior to the garnishment lien of Lackey, as Personal Representative of George Anna Johnson's estate. Therefore, Dowling had priority to the funds. Accordingly, $17,930.68 was paid to Dowling, and the remainder, $1,776.98, was paid to Lackey. No supersedeas bond was filed. The dispute arises because the fund is insufficient to completely satisfy both creditors.

 To determine the priority between the creditors, we must first address whether a person can assign an expectation of an inheritance. In *Goff v. Goff*, 104 Okla. 257, 231 P. 204 (1924), the Court held that a person as heir to property, does not acquire a vested right to the property. The right becomes vested at the death of the benefactor. However, a person can make an equitable assignment of his expectation of inheritance when adequate consideration is given to the assignor. In *McMahon v. Foley*, 188 Okla. 552, 111 P.2d 1076 (1940) (Syllabus by the Court, paragraph 2) the Court held:

An assignment by a prospective heir or devisee of his expectancy of acquiring an estate by descent or will, although void at common law, may be enforced in a court of

---

1. The assignment was handwritten, dated at the top "December 12, 1990," and entitled "Assignment of Interest." It read: "For value received I hereby assign all my right title and interest in the Estate of my mother Retta Jean Schick to Matt Dowling to satisfy the indebtedness I have with him and after all indebtedness is satisfied the remainder to be distributed to Bob R. Schick." It is then signed by Schick and notarized.

2. The record reveals that Dowling claimed $15,300.00 principal, plus interest at the rate of 8% per annum, from July 1, 1990.

3. In Dowling's brief to the trial court, he alleged that the assignment was filed in the probate case on January 10, 1991. Kelley's statement of facts to the trial court recited that same date.

equitable cognizance under proper circumstances, one of which is that it must be based upon an adequate or sufficient consideration.

■ An assignment is defined in paragraph 1 of the Syllabus by the Court in *Hoffman v. Barnett,* 198 Okla. 335, 178 P.2d 89, 89 (1946) as "an expression of intention by one that his rights shall pass to and be owned by another." Case law distinguishes between an equitable and legal assignment. The difference between these two types of assignments is that a legal assignment relates to a "thing in being", whereas an equitable assignment relates to contingent interests, expectancies, and things potential. See *Hoffman,* 178 P.2d at 91. Both types of assignments can be valid under Oklahoma law. Because Schick assigned his expectancy of an inheritance, his assignment would be categorized as one of equity.

■ Under *McMahon,* the equitable assignment is enforceable if Schick received adequate or sufficient consideration. "A valid consideration for a written contract is presumed by the law." *Earth Products Co. v. Oklahoma City,* 441 P.2d 399, 403 (Okla. 1968). Generally, consideration exists as long as there is a benefit to the promisee or a detriment to the promisor. *Hargrave v. Canadian Valley Elec. Co-op. Inc.,* 792 P.2d 50, 56 (Okla.1990). "The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it." 15 O.S.1991, § 115. Schick made the assignment to settle his debt to Dowling. No party challenges the sufficiency of the consideration. Therefore, the consideration was sufficient, and the assignment to Dowling of Schick's interest in his mother's estate is enforceable.

■ Having determined that the assignment is enforceable under Oklahoma law, we must now determine who has priority over the funds of the estate. This case involves a garnishment proceeding. The law regarding garnishment is expressed in *Culie v. Arnett,* 765 P.2d 1203, 1205 (Okla.1988): "In a garnishment proceeding the judgment creditor stands in the shoes of the judgment debtor to enforce a liability owed to the latter by a third party—the garnishee. The former may claim no greater rights against the garnishee than the latter himself possesses." [4]

Therefore, in the present case Lackey (the judgment creditor) stands in the shoes of Schick (the judgment debtor) to enforce a liability. However, in this case there is not a liability which is owed by a third party. Schick had assigned his expectation of inheritance of his mother's estate to Dowling prior to the commencement of the garnishment proceedings. At the time the garnishment proceedings began the judgment creditor had no greater rights than Schick, who did not possess any rights to the property in the estate. Accordingly, Dowling, as the heir's assignee, has priority over the funds of the estate.

■ Lackey objects that the doctrine of equitable assignment is valid to enforce the agreement between the parties to the agreement, but not for the purpose of defeating a creditor of the assignor. She urges that equitable assignment is only invoked when the claim in dispute is between the assignor and the assignee, and further asserts that the doctrine has not and should not be applicable when the claim is between the assignee and a bona fide third party creditor of the assignor, such as found here. She correctly observes that both *McMahon* and *Hoffman* involve disputes between the assignor, or the assignor's heirs, and the assignee. Lackey cites another Oklahoma case involving equitable assignment, *Kaylor v. Kaylor,* 172 Okla. 535, 45 P.2d 743 (1935), and observes that the Court enforced an equitable assignment of an interest in an estate of a living ancestor, but again the contest was between the assignor and the assignee. Lackey emphasizes the fact that the assignment of an interest in an estate of a living ancestor will be enforced as between the assignor and the assignee "and all persons having actual knowledge of the same." *Kaylor,* 45 P.2d at 743 (Syllabus 2). The distinguishing characteristic between *Kaylor* and the case at bar, was that the assignment in *Kaylor* involved a promissory note and an assignment of an

---

4. *Culie* cites *Ray v. Paramore,* 170 Okla. 495, 41 P.2d 73, 76 (1935).

interest in the estate of a living ancestor, for the purpose of securing a debt. Under such circumstances, the assignment is treated as a mortgage, and comes under rules involving mortgages. *Kaylor* 45 P.2d at 743 (Syllabus 3).

The importance of this distinction is illustrated in two cases from other jurisdictions. In *Lena v. Yannelli,* 78 N.J.Super. 257, 188 A.2d 310 (Sup.Ct.1963), the court held that an acknowledged assignment by a son of his expectant share in the estate of his mother, where the mother died leaving realty was in the nature of a conveyance, and under New York's recording laws, the assignment should have been recorded and because it was not, the statute made it void against subsequent judgment creditors without notice. But significantly, the case observes: "Where no recording act applies, rights of an assignor's creditors are subordinate to those of an assignee of an expectancy." *Lena,* 188 A.2d at 312. We observe that *Kaylor* involved just such a rule, even though a judgment creditor was not involved in the case.[5]

One of the cases cited in *Lena* is *In re Barnett,* 124 F.2d 1005 (2nd Cir.1942). In that case, a daughter assigned her testate and intestate interest in her father's estate, during her father's lifetime. In exchange for the assignment, her father paid her $5,000.00. The daughter subsequently filed for bankruptcy the day before her father's death. The trustee in bankruptcy petitioned for an order directing the daughter to execute an instrument assigning her interest in her father's estate to the trustee. The Second Circuit framed the issue as whether, in New York, a judgment creditor may avoid an assignment of an expectancy, and held that the assignment of an expectancy was valid as against a judgment creditor, and therefore as against a bankruptcy trustee. *In re Barnett,* 124 F.2d at 1009. The case cites numerous authorities to support its holding.

The two examples from other jurisdictions reveal that Lackey is incorrect in her assertion that equitable assignments are not enforced against judgment creditors, but only between assignor and assignee. We are not presented with any facts or argument to show the applicability of any recording act in this state, nor is notice an issue. Because the assignment is enforceable under Oklahoma law and the assignee of the heir has priority over funds of the estate, the decision of the Court of Appeals is VACATED and the judgment of the trial court is AFFIRMED.

HODGES, C.J., LAVENDER, V.C.J., and OPALA, KAUGER and WATT, JJ., concur.

SIMMS and HARGRAVE, JJ., dissent.

SUMMERS, J., not participating.

---

5. And although not relevant to the determination of *McMahon,* we further observe that the assign-

or, Delia McMahon recorded her assignment. *McMahon,* 111 P.2d at 1077.